# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CARRIE GRAFFIUS,**<br><br>                **Plaintiff,**<br><br>        v.<br><br>**ERIC K. SHINSEKI, Secretary,**<br>**Department of Veterans Affairs,**<br><br>                **Defendant.** | **Civil Action 07-01875  (HHK)** |

## MEMORANDUM OPINION AND ORDER

Carrie Graffius, an individual with disabilities, was working as a program specialist in the Office of Facilities Management ("OFM") in the Department of Veterans Affairs ("VA") when her employment was terminated on November 1, 2005.  She brings this action against Eric K. Shinseki,[1] in his official capacity as the Secretary of the Agency, alleging that the VA violated the Rehabilitation Act of 1973 ("Rehabilitation Act" or "Act"), 29 U.S.C. §§ 791 *et seq*, by failing to provide reasonable accommodations for her disabilities and retaliating against her by terminating her because she sought the accommodations.

Before the Court is the VA's Motion for Summary Judgment  ("Def.'s Mot.") [#20].  Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the VA's motion for summary judgment should be granted as to Graffius's retaliation claim and granted in part and denied in part as to her failure to accommodate claim.

---

[1]        When this suit was filed, the named defendant was Gordon H. Mansfield, who was then Acting Secretary of the Department of Veterans Affairs.  Pursuant to Federal Rule of Civil Procedure 25(d), Eric K. Shinseki, the current Secretary of the Department of Veterans Affairs, is substituted as the defendant in this lawsuit.

# I. BACKGROUND

Graffius was hired by the VA to "reconstruct and develop OFM's overall construction management information system and tracking databases" and adapt an off-the-shelf software product called Paragon 4 for the Agency's construction projects.  Def.'s Statement of Material Facts Not in Genuine Dispute ("Def.'s Facts") ¶ 6, Def.'s Ex. 3.  Her immediate supervisor was William Webb ("Webb"), director of OFM's Technology Support Service.

Initially, Graffius worked full time at the VA's primary location in Washington, D.C. In September 2001, however, she moved to East Freedom, Pennsylvania, a town approximately 160 miles away from her office.  According to Graffius, while working at the VA she "suffered from multiple disabilities, including diabetes, carpal tunnel syndrome, trigger finger, skeletal issues related to neuropathy and compacted bowel syndrome," Compl. ¶ 14, conditions that "substantially limit[ed] her major life activities, including walking, normal excretory functions, performing some manual tasks, and the ability to care for herself."  Pl.'s Opp'n at 11.[2]  Because of her medical conditions, Graffius used a wheelchair.

In late 2001, Graffius reported that she was experiencing health problems related to her diabetes and required frequent medical care.  In an effort to accommodate Graffius's health problems, Webb approved an agreement that allowed her to work from home, or "telecommute." During the time when Graffius was allowed to telecommute, she received a Performance Appraisal from Webb indicating that her performance was successful in all areas.

---

[2]     Graffius titles two of her filings as "Plaintiff's Response."  For clarity, the Court will refer to "Plaintiff's Response to Motion for Summary Judgment" as Plaintiff's Opposition and will refer to "Plaintiff's Response to Defendants Statement of Material Facts Not in Genuine Dispute" as Plaintiff's Response.

In May 2003, the VA decided that it was no longer feasible to have Graffius telecommute fulltime; therefore, Webb asked Graffius to develop a plan and schedule for her return to work at the office on at least a part-time basis.  Because she would have to depend on her husband to drive her, Graffius indicated that she could come to work in D.C. only one day a week.  Webb agreed to Graffius's proposed schedule and she began commuting to work in June 2003.

Before returning to her D. C. office, however, Graffius, in an email sent to Webb, requested several workplace accommodations, including an ice machine, a walker, and a cane. The building in which she worked, however, did not have an ice machine and only temporary employees were allowed to use any available walkers or canes.  Nevertheless, Graffius reported to work in June 2003 as agreed.

In October of 2003, Graffius reported to management that she suffered a broken leg and could no longer report to the Washington, D.C. office one day a week.[3]  Believing that her injury resulted from the VA's failure to accommodate her as she had requested, Graffius informed the VA that she would not be able to return to work at the D.C. office until her requested accommodations were provided.

In a letter dated April 28, 2004, Webb informed Graffius of the VA's decision to terminate her telecommuting arrangement, effective June 1, 2004.  Webb stated that "[t]echnology changes and work priorities demand your presence in the office on a regular basis," and advised Graffius to report to work in Washington, D.C. beginning June 1, 2004.

---

[3]      The VA's Statement of Material Facts Not in Genuine Dispute states that Graffius stopped coming into work in August of 2003, but Graffius asserts she stopped coming into work in October 2003.  Pl.'s Resp. ¶ 16.  Graffius's assertion appears to be correct: Exhibit 9, the Exhibit that the VA cites to support its assertion, clearly states that Graffius reported that she could not come to work on October 1, 2003.  Def.'s Ex. 9 ¶ 13

Def.'s Ex. 17.[4]  Graffius did not return to work as directed.  After depleting her sick and annual

leave, Graffius applied for additional leave under the Family and Medical Leave Act ("FMLA")

to recover from a surgery she had on her hand.

On November 4, 2004, Webb sent Graffius a memorandum that summarized the events

surrounding her FMLA leave request and informed her that she was allowed to use 12

administrative workweeks of unpaid leave under FMLA.  Webb also requested that she contact

him immediately to discuss her current status and the report date for her return to the office.

In a letter dated December 6, 2004, Webb notified Graffius that she had exhausted her

FMLA leave as of November 29, 2004.[5]  Moreover, because she did not have leave to cover her

absence from work, Graffius was placed on Absent Without Leave (AWOL) status.  Webb

warned Graffius that AWOL could lead to her removal from employment with the agency and

from the Federal Service.

On January 24, 2005, Webb again wrote to Graffius regarding her AWOL status and

ordered her to report to work no later than February 7, 2005, and urged her to contact him or

Carolyn Gill,[6] the agency's Human Resources Liaison, immediately to discuss her return to the

---

[4]        Graffius does not dispute the quoted language, however, she does dispute the truthfulness of Webb's statements.  She claims that her duties were "precisely the same as they had been while she worked from home and did not include new databases or increased interaction with OFM staff," as the letter indicated.  Pl.'s Resp. ¶ 17.  The Court addresses this dispute *infra*.

[5]        The Court notes that the VA cites to a "Letter dated 12/6/04, p. 1, attached as Exhibit 24."  Def.'s Facts ¶ 23.  But Exhibit 24 is a letter from Webb to Graffius dated January 24, 2005.  Nevertheless, Graffius does not dispute the existence or contents of a December 6, 2004 letter, Pl.'s Resp. ¶ 23, so for the purposes of this opinion, the Court will assume the VA's characterization of the letter is accurate.

[6]        During the period in question, Gill went by her maiden name Carolyn Kasterko.  Both parties, however, now refer to her as Carolyn Gill.  For the sake of clarity, this Court will

office.  On February 4 and February 7, 2005, Graffius called Gill and discussed her need for various accommodations at the office.  Graffius made several requests, including a handicapped-accessible restroom on the floor on which she worked, wrist bands, a special keyboard, and a mouse.  Gill informed her that the VA could most likely meet her needs for an office located on the same floor as handicapped bathroom facilities, but that it "could not purchase the other items . . . until [it] had the specific technical requirements and specification," and that Gill had received "no medical documentation whatsoever."  Def.'s Ex. 27.  Graffius never provided the VA with the documentation that it requested, and did not return to work on February 7, 2005, or anytime thereafter.

On March 23, 2005, Webb wrote Graffius a letter addressing her long distance commuting situation and responding to her request for accommodations.  Webb stated that (1) the building in which Graffius's office was located met all applicable handicapped-accessible requirements; (2) Graffius had elevator access to a wheelchair-accessible bathroom on the floors above and below her floor and her office was only 20 feet from the elevators; and (3) "keyboards, mouse(s), wrist pads, etcetera, are routine purchases for employees upon request."  Def.'s Ex. 28. There is no indication in the record that Graffius responded to Webb's letter.

Graffius received the VA's Notice of Proposed Removal based on a charge of excessive absence on April 21, 2005.  The VA charged Graffius with ten specifications of AWOL totaling 760 hours between November 29, 2004, and April 15, 2005, and terminated her employment effective November 1, 2005.

After unsuccessfully pursuing administrative proceedings, Graffius filed the instant suit.

---

also refer to her as Carolyn Gill ("Gill").

## II. LEGAL STANDARD

Summary judgment may be granted only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," as opposed to evidence that "is so one-sided that one party must prevail as a matter of law." *Id.* at 248, 252.

A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255. But the non-moving party's opposition must consist of more than mere unsupported allegations or denials; it must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Celotex*, 477 U.S. at 322. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## III.  ANALYSIS

Graffius asserts two causes of action. She alleges that the VA failed to accommodate her disability under Section 501 of the Rehabilitation Act and that it retaliated against her for engaging in protected EEO activity–requesting accommodations for her disabilities–by terminating her employment. The VA rejoins that it is entitled to prevail because (1) Graffius is

unable to establish a *prima facie* case with respect to her failure to accomodate claim and (2) it did not retaliate against her, but terminated her for a legitimate nondiscriminatory reason. Graffius's claims and the VA's responses to them will be addressed in turn.

## A.  Failure to Accommodate Claim

### 1.  Legal Standard

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or conducted by any Executive agency . . . ."  29 U.S.C. § 794(a).  Section 501 of the Rehabilitation Act, codified at 29 U.S.C. § 791, is the exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination.  *See Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003) (holding Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, "does not provide federal employees an alternative route for relief under the Rehabilitation Act") (internal quotation marks and citation omitted).  "Its basic tenet is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result."  *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993); *see Woodruff v. Peters*, 482 F.3d 521, 526 (D.C. Cir. 2007).[7] The affirmative requirement to accommodate under Section 501 is an obligation beyond the general non-discrimination requirement in Section 504.  *See Southeastern Community College v. Davis*, 442 U.S. 397, 410-11 (1979).

---

[7]     The standards applied when analyzing claims brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, are also employed when evaluating claims that allege employment discrimination on the basis of a disability under Section 501.  *See Woodruff v. Peters*, 482 D.3d at 527; *Taylor v. Rice*, 451 F.3d at 905.

To establish a *prima facie* case of discrimination under the Rehabilitation Act for failure to accommodate, a plaintiff must show "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make the accommodation." *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002) (quoting *Rhodes v. FDIC*, 257 F. 3d 373, 387 n.11 (4th Cir. 2001)).[8] The VA does not dispute that Graffius is an individual with a disability and that it had notice of her disability. Thus, the VA does not contest that she has established the first two elements of her *prima facie* case for her failure to accommodate claim. The VA contends, however, that Graffius does not present evidence sufficient to establish the third and fourth elements of her *prima facie* case. It contends that Graffius was not a qualified individual who with or without accommodations could perform the functions of her job and that the VA did not improperly fail to satisfy her accommodation requests.

To make out the third element of her *prima facie* case under the Rehabilitation Act, Graffius must show that she is a "qualified individual." Under the Act, a "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m); *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C.

---

[8]     In her opposition to the VA's motion for summary judgment, Graffius incorrectly applies the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to her failure to accommodate claim. While the District of Columbia Circuit has held that it is appropriate to apply the traditional *McDonnell Douglass* framework in an ADA or Rehabilitation Act case to claims that an employer acted with discriminatory intent, the D.C. Circuit has stated that it is *not* appropriate to do so when the claim is that the employer failed to provide a reasonable accommodation, as is Graffius's claim here. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).

Cir. 2002). Therefore, an individual with a disability is "qualified" if she can perform the essential functions of her position with reasonable accommodation. *See Carr v. Reno*, 23 F.3d 525 (D.C. Cir. 1994). An accommodation is "reasonable" if it allows the employee to fulfill all essential functions of her job without imposing an undue hardship on the employer. *See* 29 C.F.R. § 1614.203(c)(1); *Woodroff v. Peter*s, 482 F.3d at 526; *Carr*, 23 F.3d at 529.

The VA argues that (1) Graffius was not a qualified individual with a disability because she could not perform the essential functions of her position even with reasonable accommodations, and (2) the VA's failure to accommodate Graffius was not a result of the Agency's improper refusal to accommodate her but instead was due to Graffius's failure to present proper documentation of her needed accommodations and the undue hardship her requests would have caused.

Because Graffius's status as a qualified individual with a disability depends on what tasks she could perform given reasonable accommodation, these two claims are interconnected. *See Carr*, 23 F.3d at 529 (stating that the district court erred in analyzing the two interrelated claims separately); *see also Woodruff*, 428 F.3d at 527 (same). Therefore, the Court must "ask simply whether *any* reasonable accommodation would have allowed [Graffius] to perform all the essential functions of her job without creating an undue hardship for the agency." *Carr*, 23 F.3d at 529. The employee has the burden of identifying reasonable accommodations, and the agency has the burden of showing undue hardship. *Chinchillio v. Powell*, 236 F. Supp. 2d 18, 23-24 (D.D.C. 2003).

### 2. Graffius's Accommodation Requests

In order to survive summary judgment on her reasonable accommodation claim, Graffius must show that she requested reasonable accommodations that would have allowed her to

9

perform the essential functions of her job and that the VA failed to provide them.  Graffius

asserts that she requested the following accommodations: (1) a renewed telecommute agreement

that would allow her to work from home; (2) an office on the same floor as a handicapped-

accessible restroom; and (3) "handicap friendly office products," including wrist bands, a special

keyboard, and a mouse.[9]  Because Graffius's Rehabilitation claim is based on three separate

requests for reasonable accommodation which raise distinct legal and factual issues, the Court

will analyze each contested request separately.

### (a)  Telecommute Agreement

Graffius claims that she requested to telecommute as an accommodation for her

disabilities and that with this reasonable accommodation she could perform all the essential

functions of her job.[10]  Graffius asserts that when she was permitted to telecommute she had

access to a computer and was able to actively participate in weekly team meetings, which she

---

[9]        These three  requests are the only ones that are still in dispute.  In her complaint,
Graffius also alleges that the VA failed to reasonably accommodate her by denying her various
other requests.  She asked to be allowed to take her sugar readings, utilize the restrooms
frequently, and wear the clothing and shoes recommended by her medical provider; she also
asked that the VA provide her with a smaller chair, a wheelchair accessible desk, and access to a
wheelchair accessible water fountain.  Compl. ¶ 25-29.  But Graffius does not respond to the
VA's assertion that these requests were accommodated.  It is well established in the D.C. Circuit
that when a party does not address arguments advanced by her opponent, the court may treat
those arguments as conceded.  *Hopkins v. Women's Div. Gen. Bd. of Global Ministries*, 238 F.
Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).
Thus, the Court will treat the VA's argument with respect to Graffius's other accommodation
requests as conceded and grant summary judgment as to those requests.

[10]       The administrative record contains conflicting evidence as to whether, after the
original telecommute agreement was terminated, Graffius specifically requested to telecommute
as an accommodation for her disability.  In its brief, however, the VA does not argue that it did
not provide Graffius with a telecommute arrangement because she failed to request such an
accommodation.  Instead, it argues that "[p]laintiff's request to telework 100% of the time . . .
would have caused [the VA] undue hardship."  Def.'s Mot. at 9.  Therefore, for the purposes of
the instant motion, the Court assumes that Graffius made such a request.

attended via conference call.  Moreover, she cites a favorable Performance Appraisal of her work while telecommuting from home as evidence that she could perform the functions of her job with such an accommodation.  In the Performance Appraisal, Webb commented that Graffius's "contributions continue to be valuable" and that she has "demonstrated a strong desire to complete projects and works through adverse issues to ensure that the work product meets the need of the organization."  Pl.'s Opp'n, Ex. A.  Graffius claims that after her original telecommute agreement was terminated and she was ordered to report to the VA's office in Washington D.C., her duties had not changed; "[s]he was not required to attend additional meetings, meet with clients, and was not required to move from her desk."  Pl.'s Opp'n at 4 (citing Def.'s Ex. 26 at 126).

The VA disputes Graffius's assertions.  The VA argues that Graffius's job "required her to interact with coworkers and customers in person and to be present to learn programs and otherwise receive training."  Def.'s Mot. at 10.  According to the VA, Graffius was allowed to telecommute only as a temporary measure because of her health problems.  By 2003, however, such an arrangement was "no longer feasible or reasonable" because "management wanted to move forward with plans to develop construction management tracking systems and initiate software updates for the Paragon product, which Plaintiff needed to learn."  Def.'s Facts ¶ 3. Because Graffius would not be able to perform the essential functions of her position from home, the VA contends that Graffius is not "a qualified individual with a disability,"[11] and even if she

_____

[11]	The VA also asserts that Graffius is not a qualified individual with a disability because she previously "admitted that she is totally disabled and cannot perform her job with or without any reasonable accommodation."  Def.'s Mot. at 11 (citing Def.'s Ex. 4, Plaintiff's Responses to First Set of Interrogatories, at 3-4; Def.'s Ex. 6, Transcript of Plaintiff's EEO Affidavit, at 3-4).  The Court finds this argument unpersuasive.  Although the D.C. Circuit has adopted the "'sham affidavit rule' which precludes a party from creating an issue of material fact

were, allowing her to telecommute full-time would impose an undue hardship on the organization.  Def.'s Mot. at 10.

In *Carr*, the D.C. Circuit Court stated that "section 501 demands a great deal from federal employers in the way of accommodation.  Indeed, in appropriate cases, that section requires an agency to consider work at home, as well as reassignment in another position, as potential forms of accommodation."  *Carr*, 23 F.3d at 530 (citing *Langon v. Dep't of Health and Human Services*, 959 F.2d 1053, 1060 (D.C. Cir. 1992)).  Graffius and the VA disagree about the need for her to be physically present at the office during the time in question.  As mentioned previously, the burden of showing undue hardship is on the VA, yet Graffius's description of her job, together with her statements regarding the unchanged nature of her position from when she was first allowed to telecommute, and her high performance appraisal, cast doubt on the suggestion that the accommodation would impose undue hardship on the VA, or that even with such accommodations Graffius would be unable to perform all the essential functions of her job.  This is a matter for a jury to decide.  *See Woodruff* at 528 (holding that the district court improperly granted defendant's motion for summary judgment on plaintiff's failure to

---

by contradicting prior sworn testimony," it also stated that a shifting party can overcome this rule by "'offer[ing] persuasive reasons for believing the supposed correction' is more accurate than the prior testimony."  *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (quoting *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 114, 1123 (D.C. Cir. 1991)).  Although the Court recognizes that in her responses to the Agency's first set of interrogatories Graffius answered "No" when asked whether she "could, with reasonable accommodation, perform the essential functions of your position," Def.'s Ex. 4 at 4, Graffius seems to argue that the wording of the questions was either confusing or misleading.  *See* Pl.'s Facts ¶ 29.  Graffius's argument is supported by her testimony in the administrative hearing.  When asked to elaborate about her responses to the interrogatory in question, she stated that she *could* perform the essential functions of her position with reasonable accommodations.  Def.'s Ex. 26 at 140-43.  For the reasons elaborated *infra*, the Court finds that a reasonable jury could determine that Graffius's current contention, that she is a "qualified" individual, is more accurate than the answers she provided in her first set of interrogatories.

accommodate claim based on defendant's termination of telecommute agreement when evidence "suggest[ed] [plaintiff] did not have to be physically present in the office"); *see also Langon*, 959 at 1060 (holding that a genuine dispute of material fact existed where plaintiff had disagreed with employer regarding her position's "length of the deadlines and the need for frequent face-to-face contacts").  Thus, the VA's motion for summary judgment is denied as to Graffius*'s* failure to accomodate claim to the extent the claim is based on the VA's denial of her request to telecommute.

### (b)  Handicapped-Accessible Restroom

Graffius also requested an office on a floor with a handicapped-accessible restroom. According to Graffius, she broke her leg in October 2003 due to severe constipation from not being able to get to the bathroom.  Graffius testified in front of the MSPB that when she requested to be relocated to a floor where there was a handicapped-accessible restroom, she told Webb that "because I couldn't get to the bathroom, I filled with bowel, and I didn't want another broken bone." Def.'s Ex. 26 at 148.  She further stated that "[t]he doctors had warned me that the next time, if I didn't get to the bathroom, I could even cause kidney damage and require a kidney transplant."  *Id.*  The VA does not mention Graffius's relocation request or the Agency's reason for refusing to accommodate her request in any of its moving papers.

As previously mentioned, "accommodations are reasonable if they allow the employee to perform the essential functions of the job without imposing undue hardship on the employer." *Norden v. Samper*, 503 F. Supp. 2d 130, 145 (D.D.C. 2007).  In *U.S. Airways, Inc. v. Barnett*, the Supreme Court stated that when confronting a defendant's motion for summary judgment on the grounds that a plaintiff's requested accommodation is not reasonable, the plaintiff's burden is only to show that the requested accommodation is "reasonable on its face, *i.e.*, ordinarily or in the

run of cases." 535 U.S. at 401.  Upon such a showing, the employer is left to "show special

(typically case-specific) circumstances that demonstrate undue hardship in the particular

circumstances." *Id.* at 402.

The Court finds that Graffius has met her burden of showing that being provided an office

on the same floor with a handicapped-accessible restroom is "reasonable on its face."  On the

other hand, the VA has failed to show that making such an accommodation would be an undue

hardship.  Indeed, the VA makes no attempt to explain why it could not move Graffius to a floor

where there was a handicapped-accessible restroom.  To the contrary both Webb and Gill

testified that such an accommodation was possible.[12]  On February 7, 2005, Gill told Graffius

that "[the VA] could most likely meet her needs for office locate [sic] on on a floor with a

handicapped bathroom facilities."  Def.'s Ex. 27 (Report of Contact with Carrie Graffius).

Nevertheless, the VA later denied Graffius's request, stating that "the building meets all

applicable handicapped accessible requirements."  Def.'s Ex. 26 at 45.  The fact that the building

meets all applicable handicapped-accessible requirements, however, would not preclude a

reasonable jury from finding that the VA failed to provide Graffius with the reasonable

accommodation of relocating her to a floor with a handicapped-accessible restroom.[13]

---

[12]   When asked if she would have been able to offer Graffius an office on the same
floor as a handicapped-accessible bathroom, Gill stated "[w]e have office space on the fifth floor.
So it would have been possible to make some arrangement to have some office space up there."
Def.'s Ex. 26 at 46.  When asked the same question, Webb stated Graffius's office placement
was "outside of my control," but he admitted that a relocation "may have been possible."  *Id.* at
68.

[13]   Even if the VA believed that Graffius's requests for office relocation and a
renewed telecommute agreement were an undue hardship, the Agency was still required to
engage in an interactive process with Graffius to design an accommodation that was reasonable.
*See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111-12 (9th Cir. 2000), *vacated and remanded on
other grounds*, 532 U.S. 970 (2001).  "'The interactive process is typically an essential

### (c) Office Supplies

Finally, Graffius argues that the VA did not provide her reasonable accommodations when it failed to provide her with "handicap friendly office products," including wrist bands, a special keyboard, and a low mouse. *See* Compl. ¶ 29.  The VA vigorously rejoins that Graffius failed to provide adequate documentation for the accommodation.  The VA states that "[w]hile Defendant requested information concerning Plaintiff's specific needs for handi-cap friendly office products, Plaintiff failed to provide Defendant with documentation that delineated her medical requirements."  Def.'s Mot. at 8.  The VA asserts that "[f]ollowing a request for reasonable accommodation, an employer is permitted to seek documentation where it is necessary to determine that the individual has a covered disability for which the requested accommodation is needed."  *Id.* at 7.  Since Graffius failed to provide the required documentation, the VA claims that it "could not provide her with some of the accommodations she requested."  *Id.* at 8.  Without support, Graffius simply responds that she provided the VA with "sufficient evidence" to warrant the accommodations.

_____

component of the process by which a reasonable accommodation can be determined.'" *Alston v. Washington Metro. Area Transit Auth.*, 571 F. Supp. 2d 77, 86 (D.D.C. 2008) (quoting *Smith v. Midland Brake, Inc.*, 180 F. 3d 1154, 1172 (10th Cir. 1999) (en banc)).

The VA claims that "it acted in good faith and tried to engage in the interactive process," Def.'s Mem. at 7, however, as discussed *infra*, such efforts were only shown in regards to Graffius's requests for office products.  The VA points to no evidence in the record that would indicate that it engaged in an interactive process with Graffius to find a reasonable accommodation after it determined that relocating her office or allowing her to telecommute would impose an undue burden.  Instead, the VA simply sent a letter to Graffius stating that the "building meets all applicable handicapped accessible requirements."  Def.'s Ex. 28.  The VA's actions are not comparable to those of other employers held to have properly engaged in the interactive process. *See e.g., Scarborough*, 190 F. Supp. at 26 (holding that employer engaged in interactive dialogue when it explained why it rejected plaintiff's leave without pay ("LWOP") request and noted that it would reconsider the request after plaintiff provided beginning and end dates for the proposed LWOP period).

The VA's position with respect to Graffius's request for office products has merit.[14]  As this Court stated in *Carroll v. England*, 321 F. Supp. 2d 58 (2004), "when the duty to reasonably accommodate arises, both employee and employer must 'exchange essential information and neither side can delay or obstruct the process.'"  *Id.* at 69 (quoting *Barnett*, 228 F.3d at 1114-15). "An employer is not required to provide an accommodation prior to receiving medical documentation that substantiates the employee's need for accommodation."  *Bramwell v. Blakey*, 2006 WL 1442655 at *6 (D.D.C. May 24, 2006) (citing *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)).  Furthermore, employers may gather sufficient information from the employee requesting the reasonable accommodation and from qualified experts "as needed to determine what accommodations are necessary."  *Carroll*, 321 F. Supp. 2d at 69.

On numerous occasions, the VA informed Graffius that it would be able to provide the office products needed if she would give the Agency more specific technical requirements and specifications regarding the specific equipment she needed.  The VA also repeatedly informed Graffius that she would need to provide medical documentation to support her requests for accommodation.  Graffius provides no evidence that she provided the VA with any medical

---

[14]     In its motion for summary judgment, the VA seems to generally assert that Graffius's failure to provide adequate documentation is fatal to her failure to accomodate claim. While the Court finds that the VA's argument has merit with respect to Graffius's request for office supplies, the argument fails with respect to her other requests that did not require medical documentation, specifically her requests to telecommute and to relocate her office to a floor with a handicapped-accessible restroom.  *See Norden*, 503 F. Supp. 2d at 145 ("The duty to accommodate is a continuing duty that is not exhausted by one effort.") (citing *Humphrey v. Mem'l Hosps. Ass'n*, 239 F. 3d 1128, 1138 (9th Cir. 2001))).  Because there is no evidence in the record, and because the VA does not assert, that the VA asked for, or expected, medical documentation for any other requested accommodation, the Court does not find that Graffius's lack of documentation precludes her other accommodation claims.

documentation of her condition in support of her accommodation requests.[15]  Nor does Graffius present any evidence that she provided the VA with the specific requirements of her requested accommodations that were needed in order for the VA to fulfill her requests.  Moreover, Graffius never suggests that the VA's requests for documentation were unreasonable, and never explains why she could not provide the requested documents.  She merely provides a conclusory statement maintaining that "she did provide sufficient information for Defendant to provide the requested accommodations."  Pl.'s Opp'n at 20.

To survive summary judgment, Graffius may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F. 3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Graffius points to no evidence in the record from which a reasonable jury could have inferred that the VA denied, by inaction or otherwise, her request for "handicap friendly" office products.  Rather, the evidence presented indicates that Graffius and the VA were in mid-discussion of her request, awaiting her submission of requested medical documentation, when she was terminated.  *See Stewart v. St. Elizabeths Hosp.*, 593 F. Supp. 2d 111, 115 (D.D.C. 2009) (holding that defendant did not refuse employee's request for reasonable accommodation of her claimed mental disability because they had been engaged in ongoing discussions regarding her request but she had failed to provide her employer with the requested medical documentation of her illness).  Accordingly, the VA is entitled to summary judgment with respect to Graffius's failure to accomodate claim premised upon the VA's alleged failure to provide requested office supplies.

---

[15]     Graffius did submit medical documentation to support her application for leave under the FMLA.  *See* Def. Ex. 22.  This documentation, however, was only to excuse her absence from August 5, 2004 to October 6, 2004.  Graffius fails to point to any other medical documentation to support her accommodation requests.

**B. Retaliation Claim**

Graffius asserts that the VA terminated her employment in retaliation for her requesting reasonable accommodations.  Claims of retaliation under the Rehabilitation Act are governed by the burden-shifting framework laid out in *McDonnell Douglas*, 411 U.S. 792.  *Norden v. Samper*, 503 F. Supp. 2d 130, 156-57 (D.D.C. 2007).  Under this framework, the plaintiff must first establish a *prima facie* case of retaliation.  *See McDonell Douglas*, 411 U.S. at 802.[16]  Once plaintiff has established a *prima facie* case, the defendant must "'produc[e] evidence' that the adverse employment actions were taken 'for a legitimate, non-discriminatory reason.'"  *Aka*, 156 F.3d at 1289 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).  Once the defendant meets its burden, "the presumption . . . raised by the *prima facie* case is rebutted" and "drops from the case."  *Id.* (quoting *Hicks*, 509 U.S. at 507).  Then to survive summary judgment, the plaintiff must show that a reasonable jury could infer that the proffered legitimate reason was false and that defendant's actions were intended as retaliation from a "combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of [retaliation] that may be available to the plaintiff."  *Aka*, 156 F.3d at 1289.

The D.C. Circuit recently clarified the *McDonnell Douglass* framework where an employer asserts a legitimate, non-discriminatory or non-retaliatory reason for the adverse employment decision.  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (establishing this rule of abandoning the burden-shifting analysis for a discrimination

---

[16]       In order to establish a *prima facie* case of retaliation, a plaintiff must show "(1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two."  *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984).

claim); *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (same, for a retaliation claim).

When considering a motion for summary judgment in an employment discrimination case, a

district court does not need to determine whether a plaintiff has set out the elements of a *prima*

*facie* case. *Id.*  Rather, "'the district court must resolve one central question:  Has the employee

produced sufficient evidence for a reasonable jury to find that the employer's asserted non-

discriminatory reason was not the actual reason' for the adverse employment action, and that the

employer's action was intended as retaliation."  *Bergman v. Paulson*, 555 F. Supp. 2d 25, 35

(D.D.C. 2008) (quoting *Brady*, 520 F. 3d at 494).

     The VA asserts that it removed Graffius for a legitimate non-retaliatory reason, her

excessive absences.  After Graffius exhausted her sick and annual leave and the 12 weeks of

leave under the FMLA, the VA placed her on AWOL.  According to the VA, Graffius

accumulated a total of 760 hours of AWOL between November 29, 2004, the date when she was

first placed on AWOL, and April 15, 2005, the date the proposed removal letter was crafted.

Def.'s Ex. 30.  The VA has stated a legitimate reason for terminating Graffius.

     Since the VA has articulated a legitimate non-retaliatory reason for terminating her,

Graffius, must show that the proffered explanation is merely a pretext.  Graffius fails to make

such a showing.  Graffius admits that she was absent on the days charged by the Agency, but

contends that the VA's asserted reasons for her termination "are clearly a pretext for the

Agency's . . . retaliation against her," and that the real reason she was terminated was because the

VA did not want to provide her with her requested accommodations.  Pl.'s Opp'n at 15, 18.

Graffius's assertions are conclusory and are an insufficient basis for denying the VA summary

judgment on Graffius's retaliation claim.

The Court may not "'second-guess an employer's business judgment,' and . . . a plaintiff's mere speculations as to pretext are 'insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment.'" *Woodruff v. Mineta*, No. 01-1964, slip op. at 16 (D.D.C. Jan. 3, 2005) (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 722 (10th Cir. 1998)).  The only evidence of pretext presented by Graffius is a letter from Webb, in which he states that the VA "ha[d] gone out of its way to accommodate [Graffius] and [her] needs over the past 2-1/2 years," and that he believed that her "failure to return to work is based on [her] excessively long distant commute."  Def.'s Ex. 28.[17] Webb's letter in no way suggests pretext or that the real reason Graffius was fired was because she requested accommodations.  It simply illustrates the VA's frustration with Graffius's continued failure to report to work after an extended period of time and provides Webb's opinion–an objectively reasonable one–that her difficulty with reporting to work was due to her excessively long commute.  Accordingly, the VA is entitled to summary judgment on Graffius's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, it is this 11th day of December 2009, hereby

**ORDERED** that as to Graffius' failure to accommodate claim, the VA's  motion for summary judgment is **DENIED** to the extent the claim is based on the VA's alleged failure to permit Graffius to telecommute and to provided her an office on the same floor with a handicapped-accessible restroom and **GRANTED** in all other respects; and it is further

---

[17]     As presented, the other evidence that Graffius cites is relevant only to her failure to accommodate claim, not to her retaliation claim.  It is important to note the difference between the allegation that the VA failed, or even refused, to accommodate Graffius and the allegation that the VA terminated Graffius because she requested accommodations.

**ORDERED** that the VA's motion for summary judgment is **GRANTED** with respect to Graffius's retaliation claim.

Henry H. Kennedy, Jr.
United States District Judge